# EXHIBIT 7

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

DAVID G. DINGMANN and RANDALL D. HEBRINK, *individually, and on behalf of all others similarly situated,*

Plaintiffs,

vs.

BASSFORD REMELE, P.A.; GUSTAFSON GLUEK, P.L.L.C.; SCHWEBEL GOETZ & SIEBEN, P.A.; LOCKRIDGE GRINDAL NAUEN, P.L.L.P.; LEWIS A. REMELE, JR.; DANIEL E. GUSTAFSON; and JOHN DOES 1-10,

Defendants.

)
) COURT FILE
) NO. 24-CV-3675 (ECT/LIB)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
) Courtroom 7D
) Tue., November 12, 2024
) St. Paul, Minnesota
) 9:00 A.M.

------------------------------------------------------------

## EXCERPT TRANSCRIPT FROM

### HEARING ON
### PLAINTIFFS' AND DEFENDANTS' MOTIONS

### BEFORE THE HONORABLE ERIC C. TOSTRUD
### UNITED STATES DISTRICT JUDGE

**TIMOTHY J. WILLETTE, RDR, CRR, CRC**
Official Court Reporter - United States District Court
Warren E. Burger Federal Building & U.S. Courthouse
316 North Robert Street - Suite 146
St. Paul, Minnesota 55101
651.848.1224

**A P P E A R A N C E S:**

For the Plaintiffs:        **DOUGLAS J. NILL, P.L.L.C.**
By: DOUGLAS J. NILL, ESQUIRE
150 South Fifth Street - Suite 1850
Minneapolis, Minnesota 55402

**WEISENSELL, MASTRANTONIO
& ORLANDO, LLP**
By: JOHN CHARLES WEISENSELL, ESQUIRE
23 South Main Street - Suite 301
Akron, Ohio 44308

For defendant Bassford Remele, P.A., and Lewis A. Remele, Jr.:

**LIND, JENSEN, SULLIVAN
& PETERSON, P.A.**
By: WILLIAM L. DAVIDSON, ESQUIRE
901 Marquette Avenue South
Suite 1900
Minneapolis, Minnesota 55402

For defendants Gustafson Gluek, PLLC, and Daniel Gustafson:

**TAFT STETTINIUS & HOLLISTER, LLP**
By: MICHAEL M. LAFEBER, ESQUIRE
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

For defendant Schwebel Goetz & Sieben, P.A.:

**GORDON REES SCULLY MANSUKHANI, LLP**
By: DAVID SCHOOLER, ESQUIRE
3850 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

For defendant Lockridge Grindal Nauen, P.L.L.P.:

**GORDON REES SCULLY MANSUKHANI, LLP**
By: SUZANNE L. JONES, ESQUIRE
3850 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402

```
 1        (9:00 a.m.)

 2                    P R O C E E D I N G S

 3                    IN OPEN COURT

 4        THE COURT:  Good morning, everyone.  Please be

 5   seated.

 6        This is David Dingmann and others versus Bassford

 7   Remele and others, Civil File Number 24-3675.  Let me invite

 8   counsel at this time to note their appearances, starting

 9   with the plaintiffs.

10        MR. NILL:  Douglas Nill representing the

11   plaintiffs.

12        THE COURT:  Good morning.

13        MR. WEISENSELL:  John Weisensell, Your Honor,

14   representing the plaintiffs.

15        THE COURT:  Good morning.

16        MR. WEISENSELL:  Good morning, Your Honor.

17        THE COURT:  And who do we have here on behalf of

18   the defendants?

19        MS. JONES:  Good morning, Your Honor.  Suzanne

20   Jones with Gordon and Rees on behalf of the Lockridge

21   Grindal defendant.

22        MR. SCHOOLER:  Good morning, Your Honor.  David

23   Schooler with Gordon Rees representing Schwebel Goetz &

24   Sieben.

25        MR. LAFEBER:  Good morning, Your Honor.  Michael
```

1    Lafeber from the Taft law firm on behalf of defendants

2    Gustafson Gluek and Daniel Gustafson.

3    MR. DAVIDSON: Good morning, Judge. William

4    Davidson with the Lind Jensen firm. I'm here on behalf of

5    the Bassford Remele firm and Lew Remele.

6    THE COURT: All right. Terrific. Good morning to

7    all.

8    All right. You should know that I've read

9    everything. Here's how I'd like to -- well, how I think we

10   ought to proceed this morning.

11   Let's deal with the motion to remand first, then

12   let's go to the motion to stay, and after that I'll give the

13   parties any opportunity that they think they need to address

14   the motion to dismiss.

15   Mr. Nill and Mr. Weisensell, this is your motion

16   to remand. Let's hear from you first on that.

17   MR. NILL: Okay. Thank you, Your Honor. Would I

18   (indicating) --

19   THE COURT: Please. Yes, please. Thank you.

20   It's easier to hear you if you're up at the podium.

21   MR. NILL: May it please the Court, Your Honor.

22   The motion to remand is we think the essential

23   motion that's before the Court. We take it that if you

24   grant the motion to remand, that the stay is moot and also

25   that the motion to dismiss would be moot. It would be sent

1    back to state court and they can bring whatever motions they

2    want to bring there at that time if they want to assert

3    there's indispensable parties, they want to bring

4    cross-claims, whatever they want to do.

5              As far as our motion to remand, there's two issues

6    before the Court.  One issue is whether we plead -- for

7    purposes of the Complaint -- whether we plead minimal

8    diversity in the Complaint for the Court to have CAFA

9    jurisdiction, Class Action Fairness Act jurisdiction.  And

10   we believe that we plead minimal diversity.  We do that

11   through the class allegations.  We do that through the John

12   Doe defendants.  And of course the Court has read the

13   pleadings, but I'll run through this.

14             As far as the class allegations, we pled that the

15   putative class are residents of the state of Minnesota.  The

16   appellate courts have recognized when you plead residence,

17   you're pleading minimal diversity.  The reason is that

18   residents are not citizens.  Citizens are domiciled --

19   somebody who's domiciled in a state with an intent to remain

20   there, but residents can be -- you know, it doesn't

21   necessarily mean that they're citizens of the state, and

22   even within this case you could have a situation where --

23   this scheme of events commenced back in 2015.  You could

24   already have certain farmers who are retired who were

25   Minnesota claimants who are part of this 9,000 Minnesota

```
 1    corn growers who may have retired, you know, have their son
 2    or daughter primarily running the farm at this point and
 3    they primarily have their primary residence down in Arizona.
 4    We have neighbors in North Dakota that that's the situation.
 5            So you could certainly have for purpose of
 6    pleading somebody that's made a claim, is one of those 9,000
 7    Minnesota corn growers, but is currently residing in
 8    Arizona.  You could have somebody who has their homestead
 9    right on the border in Iowa or North Dakota, but they're
10    growing corn and they could be Minnesota plaintiffs, part of
11    this 9,000 Minnesota corn growers.
12            So again, in our class action Complaint we pled
13    residence.  A residence is not the same as citizens and the
14    appellate courts recognize that residence is in fact
15    pleading -- is showing minimal diversity for purposes of the
16    Complaint.  We also pled John Doe defendants.
17            And a prime example that I want to bring to the
18    Court's attention is this Paul LLP firm.  It's a Kansas
19    City, Missouri firm.  It's a firm that's in Missouri.  And
20    they are signatories -- there were 12 signatories on these
21    joint prosecution agreements and they are one of that group
22    of 12 that are signatories on the joint prosecution
23    agreements.  They are also parties that participated in and
24    were paid from the Minnesota Common Benefit Fund.
25            At the time that the *Syngenta* litigation was
```

```
 1    resolved, there were basically four pools of money created.
 2    There's the Minnesota pool, a class pool in Kansas, there's
 3    an Illinois pool, there's a pool for lawyers who had
 4    contingent-fee contracts, individually retained private
 5    attorney pool.  The Paul LLP firm was paid from the
 6    Minnesota Common Benefit Pool.  So again, for purposes of
 7    the Complaint we have pled -- we have shown minimal
 8    diversity.
 9              Now, courts --
10              THE COURT:  They're not a defendant, right?
11              MR. NILL:  I'm sorry?
12              THE COURT:  Paul LLP is not a defendant, correct?
13              MR. NILL:  Is not a defendant, but they very well
14    could be a defendant.
15              THE COURT:  Are you suggesting that I'm supposed
16    to take account of the fact that they could be a defendant?
17              MR. NILL:  For purposes of minimal diversity for
18    the Complaint, yes, the Court would have to take into
19    account that they could be a defendant.  That's our right
20    for purposes of the Complaint by pleading John Doe, and we
21    have through affirmative evidence --
22              THE COURT:  I guess what I'm asking is, I did not
23    understand that I could account for unnamed defendants or
24    John Doe defendants in assessing diversity.  You're
25    suggesting I can.
```

```
 1            MR. NILL:  You can.

 2            THE COURT:  And what authority do you have for

 3      that?

 4            MR. NILL:  Well, typically -- and I addressed this

 5      on page 11 of my remand reply brief.  "Typically, when

 6      analyzing removal actions based on diversity of

 7      citizenship" -- and I'm quoting right from the statute --

 8      "the citizenship of defendants sued under fictitious names

 9      shall be disregarded."  That's 28 USC Section 1441(b)(1).  I

10      think the court is alluding to that section.

11            However -- and I cite the Fourth Circuit -- the

12      Fourth Circuit recognized in the Sligh, S-l-i-g-h, case, 596

13      F.2d at 1171, that courts may consider facts that would

14      support an inference regarding the unknown defendant's

15      citizenship by offering affirmative evidence during the

16      remand litigation, because that's where we are now.  We pled

17      John Doe in the Complaint.  Now we're in the remand

18      litigation.  We're offering this Exhibit 6 showing that is

19      affirmative evidence showing that this Paul LLP firm is and

20      very well can be a defendant in the case.  Again, they're in

21      Missouri, so for purposes of the pleading the Complaint,

22      that establishes minimal diversity.

23            THE COURT:  Let's maybe get to the -- as I

24      understand it, the argument is you've got a federal claim, a

25      claim arising under federal law, namely RICO.  But
```

1   Defendants, I think, are arguing that the exceptions that

2   you want to rely on to obtain remand here don't apply in the

3   context of a case removed on the basis of 1331.

4           What authority do you have to apply the CAFA

5   exception to a 1331 removal?

6           MR. NILL:  To a removal?

7           THE COURT:  Mm-hm.

8           MR. NILL:  Well, again, they removed it under

9   federal question, but they're not the exclusive arbiters of

10  federal court jurisdiction by the Court, and we believe we

11  have pled -- through the Complaint, through the class

12  actions and the John Doe defendants, we have pled CAFA

13  jurisdiction.  The Court has federal court jurisdiction

14  under the civil RICO claims, but the Court also has CAFA

15  jurisdiction, and once the Court -- with an understanding

16  that the Court has CAFA jurisdiction, then the Court has to

17  pivot and look at the mandatory home state exception.

18          THE COURT:  Well, except I did in -- the home

19  state exception says that I should decline to exercise

20  jurisdiction under paragraph 2, and paragraph 2 is

21  essentially CAFA.  It doesn't say anything about 1331.  In

22  other words, the home state exception doesn't imply -- it

23  certainly doesn't state explicitly and it doesn't imply that

24  it somehow would kick in if I were dealing with an "arising

25  under" case.  That's the problem as I see it.

1          MR. NILL:  So we believe for purposes of the

2     Complaint -- I mean, I set forth -- I think the argument the

3     Court is looking at here is what I refer to as our nutshell

4     argument.  In a nutshell, farmers plead minimal diversity in

5     the Complaint through the class allegations and the

6     out-of-state John Doe defendants sufficient for the Court to

7     find jurisdiction, and we provide affirmative evidence in

8     this remand litigation that in fact those residents, those

9     9,000 residents of Minnesota, are all in fact citizens of

10    Minnesota, which requires the Court to apply the mandatory

11    home state exception.

12         THE COURT:  Well, I'm not questioning any of that

13    but you also plead a federal claim.

14         MR. NILL:  We plead a federal claim, but the

15    federal claim --

16         THE COURT:  I should say federal claims.

17         MR. NILL:  The federal claim, the civil RICO

18    claim, is a claim where the state court has concurrent

19    jurisdiction.

20         THE COURT:  But that doesn't -- I mean, that

21    doesn't -- the presence of concurrent jurisdiction doesn't

22    require a remand.  If that required a remand, then federal

23    courts would be remanding all kinds of --

24         MR. NILL:  The presence of -- the Court is

25    correct, the presence of the civil RICO claim.  The fact

1   that the state court has concurrent jurisdiction does not

2   mean that the Court is required to remand under that issue,

3   because that's a federal abstention issue.  When the state

4   court has concurrent jurisdiction, the federal court has --

5   you have jurisdiction for it's a federal question.  That's a

6   mandate by the United States Congress that's saying that

7   this Court -- but there's a federal question.  You have

8   jurisdiction.  But it's an abstention doctrine and the CAFA

9   mandatory home state exception is also an abstention

10  doctrine, and what we're saying is that when you have a case

11  such as this where the Court has --

12          THE COURT:  Okay.  So now I'm with you there and I

13  understand that though you're calling it a remand motion,

14  essentially what you're asking me to do is abstain.

15          MR. NILL:  I'm asking you to abstain.

16          THE COURT:  Okay.  And the cases that you cite for

17  that proposition are *Burford* abstention cases.

18          MR. NILL:  They're abstention cases, yes.

19          THE COURT:  But under the *Burford* doctrine.  So

20  essentially, allowing for abstention when there is some

21  complex, comprehensive, reticulated state administrative

22  regime that governs the matter.  I don't think we have that

23  here.

24          MR. NILL:  I mean, that would be the case here,

25  because -- the state court has concurrent jurisdiction, so

```
 1    you can abstain from taking up this case in federal court.

 2    You can abstain and let it go back to the state court.

 3            At the same time you have -- there's two

 4    directives in place here.

 5            The first directive is U.S. Congress saying if

 6    there's a federal question, federal courts have

 7    jurisdiction.

 8            The second directive is U.S. Congress saying that

 9    if in fact the defendants are Minnesota defendants and the

10    plaintiffs are all -- or at least two-thirds of the

11    plaintiffs are Minnesota citizens, the court "shall."  So

12    that's actually beyond an abstention doctrine.

13            Normally, CAFA is an abstention doctrine, but when

14    you have the mandatory home state exception, the

15    requirements for that trigger, it becomes a shall.  That's a

16    mandatory remand.  The court then is required to remand.

17    And so under that case when you have those two directives by

18    the U.S. Congress, the directive that prevails is the shall

19    directive in the mandatory home state exception.

20            Does that answer the Court's question?

21            THE COURT:  I think I understand the argument, but

22    I don't think it answers the question in a way that

23    persuades me that the home state exception applies outside

24    of CAFA, which is I think the sort of gap here that you've

25    got to fill.
```

```
 1              MR. NILL:  So the Court is struggling with

 2    agreeing with us that we have pled for purposes of the

 3    Complaint, that we have pled minimal diversity.

 4              THE COURT:  No.  No.  I'm not questioning that.

 5    I'm sort of casting CAFA to the side, focusing on the fact

 6    that you've sued and alleged violations of RICO, and that

 7    provides an independent basis for federal jurisdiction, and

 8    if there's federal jurisdiction, I can't ordinarily not

 9    exercise it.  And you're arguing, as I understand it, that

10    the home state exception nonetheless applies --

11              MR. NILL:  Yes.

12              THE COURT:  -- even in a 1331 case.  And when I

13    read the statute textually, I see that it is limited -- the

14    home state exception is limited to CAFA-only cases, and this

15    isn't a CAFA-only case.  That's the challenge.

16              MR. NILL:  That's where we diverge here, because

17    we're asserting that for purposes of our pleading in the

18    Complaint it is a CAFA case.  Yes, it's a federal-question

19    jurisdiction case, but it's also a CAFA case.  We pled

20    minimal diversity through the class allegations and through

21    the John Doe defendants.  That means then the Court has to

22    view that through the prism of not just a federal-question

23    jurisdiction case, but also a CAFA case.  And once you agree

24    that -- when you agree that it's a CAFA case, then you have

25    to look at over two-thirds of the putative class plaintiffs
```

1  are citizens of the state of Minnesota. The mandatory home

2  state exception kicks in, the shall mandate. The shall

3  mandate because it's a federal question, because civil RICO,

4  there's concurrent jurisdiction, the Court can abstain and

5  send the case back to Minnesota state court. When in fact

6  you have a mandatory home state exception, it moves beyond

7  an abstention and actually becomes a shall mandate by the

8  U.S. Congress.

9      Again, there's two directives here. There's

10 federal-question jurisdiction. The U.S. Congress said if

11 there's a federal question, federal courts have

12 jurisdiction, but the U.S. Congress has very explicitly

13 stated that if there's a mandatory home state exception

14 case, that the remand back to state court shall occur.

15 THE COURT: Well, but 1331 says "shall" too. The

16 district court shall have jurisdiction of cases arising

17 under the Constitution, laws, or treaties of the United

18 States.

19 MR. NILL: Well, we think that when you have a

20 specific "shall" in the mandatory home state exception, that

21 shall becomes the governing -- I guess it's a question of

22 which becomes the governing shall. We think that the

23 mandatory home state exception was explicit recognition --

24 the shall in -- 1331 is sort of a general directive by the

25 U.S. Congress that if there's a federal question, federal

TIMOTHY J. WILLETTE, RDR, CRR, CRC
651.848.1224

```
 1    courts have jurisdiction.  We think that the shall in the
 2    mandatory home state exception in CAFA is a specific shall
 3    that would in this case override the general shall or would
 4    be sort of the more powerful shall, if you will, and
 5    requires the court to remand it back to state court.  And
 6    again, we cite numbers of cases, many cases, where the
 7    courts -- in federal courts remand a case that has civil
 8    RICO claims and remand it back to state court, and this is
 9    particularly true when the civil RICO claims --
10              THE COURT:  But those were *Burford* --
11              MR. NILL:  -- are intertwined with the state
12    claims.
13              THE COURT:  Those were *Burford* abstention cases,
14    right?
15              MR. NILL:  Yes.
16              THE COURT:  Okay.  And the problem there as I see
17    it is *Burford* abstention requires the presence of some
18    comprehensive, reticulated state administrative regime.  And
19    in the insurance context, like the insurance dissolution
20    context, that happens all the time, but we don't have
21    anything like that here that I could see in the briefing.
22    What's the comprehensive, reticulated state administrative
23    regime that might govern here?
24              MR. NILL:  Well, I don't think there is -- we
25    don't need in this particular case a comprehensive state
```

         regulatory regime.  We have the U.S. Congress recognizing

         through the Class Action Fairness Act that there's some --

         some class actions are so uniquely state class actions when

         you have all the defendants in one state or at least all the

         primary defendants in one state.  When you have at least

         two-thirds of the putative class members are all of one

         state and when you have generally all Minnesota claims with

         the exception of the two civil RICO claims, the mandatory

         home state exception requires it's a "shall," that it shall

         go back to the state court.  It doesn't involve -- it's a

         different line of cases than those, you know, cases you're

         referring to that involve a state regulatory scheme.

                    THE COURT:  Well, I'm referring to those cases

         because you cited them.

                    MR. NILL:  Well, I think they support the argument

         that this is a case that should be remanded back to state

         court.  This is sort of akin to those types of cases.

                    THE COURT:  All right.  My questioning, I suspect,

         Mr. Nill, has kind of put you onto maybe off the outline

         that you had originally planned.  If there's anything

         further that you'd like to get on the record with respect to

         the remand motion, I certainly want to give you that

         opportunity.

                    MR. NILL:  Well, again, our arguments are in the

         brief.  We just think that, you know, in the Complaint we

1    pled residence which provides minimal diversity and a class

2    definition, but then we're entitled to -- in a nutshell we

3    plead minimal diversity in the Complaint, but we're entitled

4    to present affirmative evidence in this remand litigation

5    that these 9,000 corn growers, at least two-thirds of them,

6    are Minnesota citizens.

7         There's also a line of cases that say basically

8    and I just pulled off about three or four just in the last

9    year here cases by federal courts where they address the

10   mandatory home state exception and when they're looking

11   at -- you can have a case where there's like a Visa credit

12   card lawsuit or something and it's a little more difficult

13   to decide whether the residents are actually citizens of a

14   particular state.  And sometimes the courts have

15   supplemental briefing on that or discovery.

16        Here's a case where these 9,000 corn growers are

17   Minnesota corn growers.  There might be a few that are

18   retired in Arizona and there might be a few who actually --

19   their homestead is right across the border in North Dakota

20   or Iowa, but it's more probable than not that these corn

21   growers are Minnesota citizens.  The corn growers, farmers,

22   they have homesteads, they have land investments.  They're

23   not moving from one state to another just, you know, on a

24   whim going to a different apartment here or a different

25   apartment there.

1    It's more probable than not that two-thirds of

2  these Minnesota corn growers, Minnesota citizens -- the

3  defendants come in this remand litigation and they assert --

4  again, we asserted one thing in our Complaint.  They assert

5  in the remand litigation, they clarify, basically, that all

6  9,000 of these Minnesota corn growers, these putative class

7  plaintiffs, that all 9,000 Minnesota citizens, and how do we

8  know that?  Because they claim there's no minimal diversity.

9  Well, of course logically, if they're claiming there's no

10 minimal diversity, what they're saying is -- these are their

11 clients and they have the documents for these clients, so

12 they're acknowledging that all 9,000, or at least two-thirds

13 of these, which is the requirement, they're basically saying

14 all 9,000 of these are Minnesota corn growers.

15    So I guess that's -- if the Court has any other

16 questions.

17    THE COURT:  I do not.

18    MR. NILL:  Okay.  Thank you, Your Honor.

19    THE COURT:  Thank you, Mr. Nill.

20    Counsel?

21    MS. JONES:  Good morning, Your Honor.  Again,

22 Suzanne Jones on behalf of all defendants on this particular

23 motion, actually all three motions.

24    Your Honor very correctly pointed out the plain

25 language of the home state exception under 1332(d)(4), which

1    of course is the diversity jurisdiction statute, and that

2    expressly limits the home state exception and the local

3    exceptions to jurisdiction under paragraph 2, which of

4    course is CAFA jurisdiction.

5         Now, here the defendants properly removed this

6    lawsuit based on federal-question jurisdiction under 1331 as

7    a result of the two RICO claims pled in Counts II and III of

8    the Complaint.  And the CAFA jurisdiction discussion and

9    exceptions under 1332 really have absolutely no bearing on

10   or relevance to federal-question jurisdiction, which is what

11   this Court has.

12        There is case law that directly addresses this

13   issue and that is a case called **Blevins**, and it's 849 F.3d

14   1016 from the Eleventh Circuit, and they analyze the issue

15   and concluded that the 1332(d)(4) exceptions do not affect

16   federal-question jurisdiction.  And the reasoning there --

17   and I think it's absolutely right -- is otherwise, state

18   courts would essentially have exclusive jurisdiction over

19   local federal question class actions.  There's another case

20   from the District of Utah called **Ogden Regional Airport**,

21   which is 2022 WL 103792, which reaches the same conclusion,

22   Your Honor.

23        With this Court having federal-question

24   jurisdiction, I think the Court has already recognized that

25   the Court generally then has no discretion to remand a claim

1    that states a federal question, and that is also recognized

2    within this circuit, the Eighth Circuit, in the *Gaming Corp*

3    *of America vs. Dorsey & Whitney*, 88 F.3d 536.

4             With respect to the just general argument that

5    federal abstention is somehow required under RICO claims

6    just because a state court has concurrent jurisdiction, that

7    is the opposite of what the case law actually says.

8             Again, *Tafflin*, which is a case cited to and

9    relied on repeatedly by the plaintiffs in support of that

10   issue, really solely addressed the issue of concurrent

11   state-court jurisdiction for RICO claims.  It was not within

12   the context of removal or federal jurisdiction based on

13   federal question there.

14            And there are cases that we cite to in our brief

15   including the *Emrich* case and the *Corpe* case, that stands

16   for the proposition that just because a state court has

17   concurrent jurisdiction over federal RICO claims under

18   *Tafflin*, it does not preclude removal of those claims to

19   federal court just as we did here and does not divest the

20   federal court from federal-question jurisdiction.  And in

21   fact, within RICO Congress did not prohibit the removal of

22   RICO claims or divest the federal courts of jurisdiction in

23   that federal legislation which it has in other federal laws.

24            So it's our conclusion, Your Honor, that this

25   Court absolutely has proper jurisdiction over this matter

```
1    based on federal-question jurisdiction under 1331 and that
2    the motion to remand is properly denied as a matter of law.
3              Would Your Honor like me to now address the stay?
4              THE COURT:  No.
5              MS. JONES:  Okay.
6              THE COURT:  Let's give Mr. Nill an opportunity to
7    rebut and then we'll turn to the motion to stay after the
8    motion to remand has been fully heard.
9              MS. JONES:  Thank you.
10             THE COURT:  Mr. Nill, anything in rebuttal?
11             MR. NILL:  Actually, not really.  I think again
12   our pleadings are plain.  I think that they -- some of the
13   cases that they cite, if you actually read the cases,
14   sometimes they're not entirely accurate with the way they're
15   presenting the cases.
16             We think that this is a case -- courts very
17   frequently -- the U.S. Supreme Court has recognized that
18   civil RICO claims, that state courts have jurisdiction.
19   It's the federal abstention doctrine.  The federal court can
20   abstain and send those cases back to state court.  Numerous
21   courts have done that, particularly when the claims are
22   intertwined with the state court claims, such as the fraud,
23   the breach of fiduciary duty, the ethics sort of breaches
24   that occurred in this case.  And again, we
25   have -- we pled minimal diversity.  Particularly, we've pled
```

1  minimal diversity through the class allegations and through

2  the John Doe defendants.  So the Court has CAFA

3  jurisdiction.

4          Then you pivot to the mandatory home state

5  exception and we believe that the Court -- the shall

6  mandate, the directive by the U.S. Congress, the shall

7  mandate is the overriding mandate here, that the Court

8  should send this case back to state court where they have

9  concurrent jurisdiction over the civil RICO claim.

10         Thank you, Your Honor.

11         THE COURT:  Thank you, Mr. Nill.

12         All right.  Well, as I say, I read everything.  I

13 read the Complaint cover to cover along with the briefing on

14 the motion to remand and the briefing on the other motions

15 as well.  All of that thoroughly informed me regarding what

16 is going on with respect to the remand motion and I am

17 prepared to rule from the bench and deny the motion.

18         I'll explain the reasons for that decision on the

19 record here this morning.  This will be the only place where

20 that explanation appears, so if it's something that you'd

21 like to obtain, you'll need to order a transcript.

22         The Minnesota firms removed the case here on the

23 basis of federal-question jurisdiction.  See their notice of

24 removal at paragraphs 7 through 10.

25         The Complaint asserts two federal causes of

```
 1   action.   Those are the RICO claims in Counts II and III.
 2           The other claims, as far as I can tell, arise from
 3   a common nucleus of operative fact, namely the alleged
 4   exclusion of the Minnesota farmers from the *Syngenta* class,
 5   so there's supplemental jurisdiction over those claims.
 6           The farmers argue that the mandatory home state
 7   exception in CAFA requires the case to be heard in state
 8   court.   That statute requires district courts to decline
 9   jurisdiction where --- quoting here -- "two-thirds or more
10   of the members of all proposed plaintiff classes in the
11   aggregate and the primary defendants are citizens of the
12   state in which the action was originally filed."
13           This provision as I've indicated through my
14   questioning I read to apply only to CAFA jurisdiction, that
15   is, when there is minimal diversity and the amount in
16   controversy exceeds $5 million.   The statute does not
17   require declining jurisdiction in federal question cases.
18           Indeed, the statute that the farmers rely on,
19   1332(d)(4)(B), explicitly restricts itself to a subset of
20   diversity cases and is not relevant to federal-question
21   jurisdiction.   Now, the farmers elide that critical language
22   when they quote the statute at page 16 of their brief.
23   Without the missing language the statute reads:   "A district
24   court shall decline to exercise jurisdiction under paragraph
25   2," and paragraph 2 describes CAFA jurisdiction.   So I don't
```

1    read that exception to apply in "arising under" cases, and

2    here, as I indicated, there is a federal question.

3          The alternative construction of the farmers'

4    argument is that though there is federal jurisdiction, the

5    Court should nevertheless abstain.  I inferred this from the

6    briefing and Mr. Nill mentioned it explicitly here today.

7    *Tafflin* held that state courts have concurrent jurisdiction

8    over federal RICO claims.  It affirmed -- and Tafflin is

9    T-A-F-F-L-I-N.  It affirmed a lower court's *Burford*-grounded

10    abstention because the RICO action there was intertwined

11    with Maryland's comprehensive scheme for the rehabilitation

12    and liquidation of insolvent state-chartered savings and

13    loan associations.

14          Here, Minnesota has no unified method for the

15    formation of policy and determination of attorney-fee

16    forfeiture suits such that review in state court would be

17    expeditious and adequate in the sense that *Burford*

18    describes, so I find that *Burford* abstention does not apply

19    here.

20          Plaintiffs rely on other cases to support the

21    abstention argument, but none really fit.  In *Metro Ford*

22    *Truck Sales*, which is the Fifth Circuit case, the court

23    affirmed a remand where the only remaining federal claim was

24    the RICO claim by a defendant against a third party, not any

25    claim in the original Complaint, so under the well-pleaded

1    Complaint rule there was not federal jurisdiction.

2         In ***Villagordoa Bernal***, which is the Central

3    District of California case, the court remanded a RICO claim

4    where the defendants had removed in an untimely manner.  We

5    don't have anything like that here.

6         And in ***Holland***, the Northern District of Alabama

7    case, the court applied an outdated version of the removal

8    statute to abstain from hearing a RICO claim that it

9    described as so intertwined with and so indistinguishable

10   from the state-law claims as to be very difficult if not

11   impossible to treat separately.  Not only was the statute

12   amended to strike the operative language the court relied on

13   there, but ***Holland*** itself was overruled by the Eleventh

14   Circuit.  ***See In Re City of Mobile***, 75 F.3d 605, at 608.

15        There is one other point the farmers raise in

16   their reply brief.  The Minnesota firms filed their

17   opposition brief four days late.

18        Accepting that as true, the farmers claim that the

19   late filing prejudiced their ability to amend the Complaint

20   by right under Rule 15.  They had 21 days to amend after the

21   Minnesota firms filed their motion to dismiss.  They filed

22   their Rule 12(b)(7) motion on September 23rd, so their 21

23   days were up October 14th.

24        The farmers argue that if the Minnesota firms

25   filed their opposition by October 11, they would have had

1  that is, the farmers would have had -- several days to amend

2  as of right and fix any deficiencies in the Complaint. The

3  problem as I see it is the farmers haven't shown prejudice

4  there because they haven't tried to amend and they haven't

5  identified any amendments that they would make to cure the

6  remand-relevant questions.

7       So for all of those reasons, then, the remand

8  motion will be denied.

9              *       *       *       *

10             **[ End of excerpt transcript ]**

11

12             **C  E  R  T  I  F  I  C  A  T  E**

13

14  I, **TIMOTHY J. WILLETTE**, Official Court Reporter

15  for the United States District Court, do hereby

16  certify that the foregoing pages are a true and

17  accurate transcription of my shorthand notes,

18  taken in the aforementioned matter, to the best

19  of my skill and ability.

20             */s/ Timothy J. Willette*

21

22       **TIMOTHY J. WILLETTE, RDR, CRR, CRC**
            Official Court Reporter - U.S. District Court

23  Warren E. Burger Federal Building & U.S. Courthouse
            316 North Robert Street - Suite 146

24             St. Paul, Minnesota  55101
                   651.848.1224

25